AO 106 (Rev. 04/10)  Application for a Search Warrant                                     AUTHORIZED AND APPROVED/DATE: _2/20/24_ *Jordan Carry*

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

In the Matter of the Search of                            )
*(Briefly describe the property to be searched*          )
*or identify the person by name and address)*            )        Case No.  24-MJ- **162-SM**
                                                          )
Premises known as 3700 NW 58th St., Oklahoma City,       )
Oklahoma 73112                                           )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is attached and incorporated by reference.

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of and/or access with intent to view child pornography |
| 18 U.S.C. § 2252A(a)(2) | Distribution of child pornography |

The application is based on these facts:
See attached Affidavit of Special Agent Marisol Flores

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Marisol Flores, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __Feb 20, 2024__

_____
*Judge's signature*

City and state:  Oklahoma City, Oklahoma                U.S. MAGISTRATE JUDGE
                                                        *Printed name and title*
                                                        W.D. OKLA.

## THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Marisol Flores, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

### INTRODUCTION

1.     I have been employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI) since May 2015, and I am currently assigned to the Oklahoma City Division. Since joining the FBI, I have been involved in investigations of child exploitation matters and computer crimes against children. I am currently assigned to investigate violations of federal law involving the exploitation of children. I have gained expertise in conducting such investigations through in-person trainings, classes, and everyday work in my current role as an SA with the FBI.

2.     As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3.     I am investigating the online activities of Christopher Nicholas Arico, who is believed to reside at 3700 NW 58ᵗʰ St., Oklahoma City, Oklahoma 73112 (the "SUBJECT PREMISES," as further described in Attachment A). As shown below, there is probable cause to believe that Christopher Nicholas Arico (Arico) possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and distributed child pornography in violation of 18 U.S.C. § 2252A(a)(2). I submit this Application and Affidavit in support of a search warrant authorizing a search of the SUBJECT PREMISES. Located within the

SUBJECT PREMISES, I seek to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, specifically Arico's devices in which he uses to communicate with undercover law enforcement officers for the purposes of accessing, viewing, and distributing child pornography, and any other electronic devices to which Arico could have transferred files to.  I request authority to search the entire SUBJECT PREMISES, including the residential dwelling, the curtilage of the residence, including, but not limited to storage buildings, vehicles located on the SUBJECT PREMISES, the persons in the SUBJECT PREMISES, at the time of the search, and any computer (as broadly defined in 18 U.S.C. 1030(e)) reasonably believed to belong to or have been used by Christopher Nicholas Arico located therein, where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

4.    Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the foregoing violations are presently located at the SUBJECT PREMISES.

## BACKGROUND OF THE INVESTIGATION

5.    In October 2023, a law enforcement officer acting in an undercover capacity (hereinafter the "UC-1") was observing posts on the member-based online forum Ins-Dreams.com, a site for incest-related topics.  UC-1 observed a post on Ins-Dreams.com

from user "sadcoffee" stating, "anyone wanna chat and talk about taboos and kinks? dm"[1].

"sadcoffee" included their Telegram[2] username "sadcoffee1" for direct messaging. UC-1

sent "sadcoffee1" a direct message on the Telegram application and continued to

communicate with "sadcoffee1" on Telegram, "sadcoffee" on Ins-Dreams.com, and

"sadcoffee" on Session[3] as described in the following paragraphs.

6.     Ins-Dreams.com user, "sadcoffee", Telegram user, "sadcoffee1", and

Session user, "sadcoffee" were determined by law enforcement to be utilized by the same

individual, Christopher Nicholas Arico. As described below, UC-1 communicated with

Ins-Dreams.com user, "sadcoffee", Telegram user, "sadcoffee1", and Session user,

"sadcoffee". In those chats, the user said he lived in "okc", stated his name was "chris"

and that he was "34" years old. Christopher Nicholas Arico's current age is 34 years old.

The user went on to say, "my niece is 9", and that her name was, "ari". Open-source checks

revealed Christopher Nicholas Arico has a sibling named Angelina Maria Arico, and social

media checks show Christopher Arico being friends with Angelina Maria Martinez (Arico).

On Angelina Maria Martinez's social media, she posts about a daughter, "Arie", who

recently turned 9-years-old. The photos Angelina posted of Arie on social media are a

---

[1] "dm" is a common acronym for direct message.

[2] Telegram is an end-to-end encrypted messaging application. As stated on telegram.org, Telegram is a messaging application with a focus on speed and security, it's super-fast, simple and free. You can use Telegram on all your devices at the same time – your messages sync seamlessly across any number of your phones, tablets or computers. Telegram has over 700 million monthly active users and is one of the 10 most downloaded apps in the world. With Telegram, you can send messages, photos, videos and files of any type (doc, zip, mp3, etc), as well as create groups for up to 200,000 people or channels for broadcasting to unlimited audiences.

[3] Session is also an end-to-end encrypted messaging application. As stated on getsession.org, Session is an end-to-end encrypted messenger that minimises sensitive metadata, designed and built for people who want absolute privacy and freedom from any form of surveillance.

match to the photo Telegram user "sadcoffee1", shared with UC-1 as "ari". In addition, the photos Angelina posted of herself are a match to the photo that Telegram user "sadcoffee1" shared with UC-1 as being of his sister. The user then sent a photo of himself to UC-1, which was compared with Christopher Nicholas Arico's driver's license, and it was determined to be the same person.

7.    UC-1's first Telegram message to Arico was, "Hey saw your posts on ins dream. Have some family experience, would love to chat more with you on your". Arico replied, "nice! Hows it going". UC-1 answered, "Hey, thanks for the reply Going well how are you?" Arico said, "just left work so pretty good". UC-1 continued, "Nice. You in the US? I'm in Cali". Arico answered, "yep Oklahoma […] i live in okc".

8.    Arico went on to ask UC-1, "how old are you and what are you into […] just incest or other taboos". UC-1 answered, "43 […] Into most everything, no poo or blood though". Arico then said, "yep same here". UC-1 asked, "What about u?". sadcoffee1 replied, "incest and young are my favs". UC-1 said, "I like young too. Have a daughter myself. You have any experience or fam your into?" Arico answered, "wow lucky id love a daughter i have a niece and of course my sister lots of experience with my sister when we were teens but haven't been active since then". UC-1 then asked Arico how old their niece was, and Arico replied, "my niece is 9". UC-1 continued and asked, "How old are you and how old is your gf?" Arico answered, "im 34 and she is 22".

9.    UC-1 went on to ask, "What's your age preference?" to which Arico answered, "10-17". When UC-1 asked if Arico had ever been with anyone in that age range before, Arico affirmed and then said, "when i was 22 i fucked my friends 13 yo sister

4

[...] she was a lot of fun. we messed around a few times until i got paranoid about getting caught".

10.    UC-1 also asked, "You creep or do anything with your niece?" Arico answered, "yea ive helped her change clothes a lot when she is younger and touched her all over". UC-1 followed up asking, "Oh really? Just light touching or anything more?" Arico said, "yeah nothing more. didnt finger her or anything but my cock was so hard". UC-1 asked soon after, "Ever taken any creep shots or anything of her?" Arico answered, "i absolutely would i have not yet but definitely need to start".

11.    Arico then sent UC-1 an image of a minor female in overall shorts with a blue and white t-shirt.[4] Arico went on to send a photo of an adult female wearing a grayish shirt and said, "her mom"[5]. Later in the conversations, UC-1 said, "I'm Bruce btw, my daughter is Maisy", to which Arico said, "im chris. niece is ari". Arico later asked, "can you describe what she [Maisy] looks like?" UC-1 went on to describe Maisy as, "a petite brunette that likes to wear pigtails. No butt yet and just some small little buds on top. Still hairless pussy [...] Cute smile too. The smile gets me going all the time". Arico replied, "awww she sounds gorgeous".

12.    Then Arico sent an image of child sexual abuse material described as:

"BD-COMPANY BD-TEAM". The image depicts a prepubescent female, wearing no clothes except for black high-heeled sandals on both feet, facing

---

[4] Based on the communications between UC-1 and Arico, this photo is of his 9-year-old niece and matches social media posts described above.

[5] Based on the communications between UC-1 and Arico, this photo is Arico's sister, Angelina Maria Martinez, and matches social media posts as described above.

the camera and sitting on a flat surface on top of a white covered cloth. She

has brown hair extending past her shoulders, tied into two pigtails and is

holding the right pigtail with her right hand. The female is sitting with her

knees bent and legs behind her with her ankles spread out to either side,

exposing her vagina.

Arico responded to the image he sent saying, "pigtails!" UC-1 replied, "She actually looks

a lot like my daughter! How old you think she is?" Arico answered, "12ish maybe [...]

how hot would it be to trade".

13. Soon after, Arico sent another image of child sexual abuse material described

as:

An apparent pubescent female and another female of indeterminate age not

wearing clothes are standing in what appears to be a bathroom facing the

camera. The pubescent female with brown hair styled in what appears to be

a bun style atop her head, is standing with her vagina exposed.

14. UC-1 confirmed Arico's Ins-Dream.com username asking, "What's your ins

name btw". Arico answered, "sadcoffee". Following additional exchange of Telegram

messages, Arico sent UC-1 two videos of child sexual abuse material described as:

"BMTU3796.mp4": (video shared by sadcoffee1 via Telegram on or about October

26, 2023, with a time stamp of 12:21 p.m.) The video, approximately 10:35 long,

depicts an apparent prepubescent female (female) with shoulder length brown hair

sitting on a flat surface covered with a white cloth in what appears to a bedroom

with a brown ceiling fan. The female is facing the camera (angled to show her upper

6

body and the room's ceiling) with her legs crossed in front of her with no clothing visible. The female moves to a kneeling position revealing black and white colored panties covering her genitals. While still facing the camera the female starts to slide her panties down before stopping, without revealing her genitals, pulling her panties up and returning to a sitting position with her legs again crossed. Later, the female adjusts the angle of the camera so it is pointed toward her vaginal area and, while seated with her knees spread revealing her vagina, she begins to repeatedly fondle and eventually insert fingers from both hands around and into her vagina.

Embedded in chat recording video file "MXYH1168.mp4": (video shared by sadcoffee1 via Telegram to UC-1 on or about October 27, 2023, with a time stamp of 10:26 a.m.) The video, approximately six minutes long, depicts an apparent prepubescent female, and an adult male with the male in a sitting position and the female sitting on the male's lap. Both the male, naked from the waist up and wearing blue jeans, and the female, naked from the waist down wearing a light-colored long sleeve shirt, are facing the camera. Shortly thereafter, the male's waist area is exposed. The male's erect penis is protruding between the female's legs and situated next to her vagina. Later, the female holds and massages the protruding penis with her right hand, eventually holding and massaging the penis with both her hands. Later, the female moves off the male's lap and exits from view of the camera. The male, still seated, moves the waist of his blue jeans down exposing more of his genital area and erect penis and holds it with his left hand. The female walks back into the camera view facing the male and, while standing, positions her vagina in

7

front of the male's penis obscuring its view. Eventually, with the female still standing in front of the male, his erect penis is exposed between the female's legs, situated right below her vaginal area, while he massages her buttocks with both of his hands. Later, with the male still seated and the female standing and facing him, the male holds his erect penis with his right hand and is shown trying to insert it into her vagina. The male's penis is then obscured as the male and female are shown engaging in what appears to be vaginal sexual intercourse.

15.     On November 1, 2023, when UC-1 asked Arico if Arico wanted to show Maisy any photos of himself, Arico said, "you can show her pics if you want" and sent a photo of himself in a gray shirt.  As stated above, this photo was compared to Arico's driver's license and was determined to be the same person.

16.     On or about November 8, 2023, UC-1 attempted to send a message on Telegram to Arico, but it appeared the account had been deleted. UC-1 then sent a message to Arico on Ins-Dream.com, "Hey man it's Bruce from Telegram. Tried to reach out. It your account gone. Did you get banned?"  On November 12, 2023, Arico answered, "so summer[6] got into my phone using my password. i got really paranoid and deleted everything".  Later in the messaging, UC-1 asked Arico if he was on another messaging platform, to which Arico answered, "im thinking of session".  UC-1 let Arico know UC-1 was on that platform, and Arico provided UC-1 with his Session ID as: "05080848d8f5ffba4fd9a4d0d91a44989ce931dd3400e0bf4edc44287516447958"

---

[6] Based on social media information, "summer" is a friend of Arico's, and, based on the communications with UC-1 and Arico, is Arico's former girlfriend.

17.    On or about November 17, 2023, UC-1 sent a Session message to the Session ID Arico provided and began communicating with Arico on Session. Arico's display name on Session was "sadcoffee". In these communications, which lasted until approximately December 5, 2023, UC-1 explained to Arico that UC-1 had recently begun talking to a "dirty uncle" who lived in Oklahoma on the Kik messaging platform. In response to this information, Arico said, "send him my way", and provided his Kik username as, "cutecouple9189". Also, in the communications on Session with UC-1, Arico explained he was residing at his mother's house when he messaged, "im staying with my mom for a little while had to break up with the gf".

18.    On or about December 5, 2023, I, in an undercover capacity, sent a message on the Kik messaging application to Kik user "cutecouple9189", which had a display name of "christopher a", saying, "Hey [undercover username of UC-1] sent me". Arico replied, "hey hey". I then said, "whats up man", and Arico answered, "not much. getting ready for work". I asked, "what do you do", to which Arico replied, "i work in a warehouse". As the communications went on, Arico asked, "where are you from". I answered, "from okc you". Arico then said, "yep also in okc". When I asked what Arico was into, he answered, "taboo mostly. incest, young, horses". When I asked what Arico does for fun he said, "jerk off to pics and fantasies i have a niece". Later in the chats, Arico sent one image of child sexual abuse material described as:

> Two minor females standing and looking towards the camera. The minor female on the left is shown from mid-thigh up and is not wearing any visible clothing, exposing her vagina and breasts. The minor female on the right is shown from her knees up

9

and is not wearing anything clothing either, exposing her legs crossed and breasts. Later in the chats, when I asked Arico, "where do you find the pics you like", Arico answered, "websites. trading with users".

19.    On or about December 7, 2023, an administrative subpoena was served to Kik requesting subscriber information for user cutecouple9189. On or about December 11, 2023, Kik provided the following results:

> Date: December 7, 2023
>
> First Name: christopher
>
> Last Name: a
>
> Email: christopher006a@gmail.com (confirmed)
>
> Username: cutecouple9189

20.    Based on my training and experience, when an individual who is distributing child sexual abuse material uses the phrase "trade" or "trading," that individual is wanting to obtain child sexual abuse material, as well as provide others with child sexual abuse material. The communications described in the previous paragraphs show Arico wanting to trade child sexual abuse material with UC-1, and explaining to me how he obtained child sexual abuse material by trading with others. Moreover, Arico shared and distributed child sexual abuse material to UC-1 and myself on numerous occasions in both image and video form, as well as expressed his sexual attraction to children aged 10-17 years old while having a 9-year-old niece.

21.    As noted above, Arico told the UC-1 he moved in with his mother. Arico's mother has been identified as Corrina Arico, and his father has been identified as Nicholas

Arico.  Open-source checks list Corrina Arico as Nicholas Arico's spouse. The current city
utilities of the SUBJECT PREMISES, 3700 NW 58th St., Oklahoma City, Oklahoma
73112, check back to Nicholas P Arico.  On February 6, 2024, law enforcement installed a
pole camera to capture the public view of the SUBJECT PREMISES.  Both Arico and
Nicholas Arico have been observed on the pole camera departing and arriving at the
SUBJECT PREMISES several times from February 6, 2024, to February 13, 2024. One of
the vehicles parked at the SUBJECT PREMISES each day on pole camera observation is
a red Dodge Ram 1500 truck bearing Oklahoma license plate IWZ-877, registered to
Nicholas Paul Arico at the SUBJECT PREMISES. Arico has been observed on pole camera
departing and arriving back to the SUBJECT PREMISES in a black Nissan Sentra with
paper tags from February 6, 2024, to February 13, 2024.  On February 13, 2024, physical
surveillance observed Arico exit the SUBJECT PREMISES and depart in the black Nissan
Sentra with paper tags.  Law enforcement positively identified Arico as the driver of the
black Nissan Sentra during physical surveillance, and followed him to Hagar Restaurant
Service, 6230 NW 2nd, Oklahoma City, Oklahoma.  This is likely Arico's place of
employment, as the building he parked near and entered in was a warehouse-type structure
as described in his chat with me.[7]

     22.     I am aware that computers and computer-related media are portable, and that
evidence can be stored on media as small as a fingernail-sized memory card.  I have learned
from other law enforcement officers who have executed search warrants in investigations

---

[7] See paragraph 18 for reference of Arico working in a warehouse.

of this nature, and my own training and experience, that computers and digital devices containing child sexual abuse material and associated communications can be located in vehicles and on the persons of occupants located on the premises. In addition, I am aware that people frequently transport their computers and cellular telephones on their person and in their vehicles. Due to the portable nature of electronic storage devices and the ease with which they can be transported and hidden, I am requesting authority to search any vehicles on the SUBJECT PREMISES, as well as persons if on the SUBJECT PREMISES, when the search warrant is executed.

## DEFINITIONS

23.    The following definitions apply to this Affidavit and Attachment B:

a. "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text based online communications such as Internet forums and email.

b. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

c. "Child Sexual Abuse Material" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the

use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

d. "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e)(1).

e. "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

13

f. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alphanumeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

g. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

h. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

i. "Minor" means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

14

j. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, see 18 U.S.C. Section 2256(8)(A), or that have been created, adapted, or modified to appear to depict an identifiable minor, see 18 U.S.C. Section 2256 (8)(C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* U.S.C. § 2256(2)(A).

k. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

l. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives,

or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

m. A "storage medium" or "storage device" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

n. A "website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as HyperText Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text transport Protocol (HTTP).

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

24.     Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the

16

search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

25.    In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases involving child sexual abuse material where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues.  In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media).

17

26.    Furthermore, I know that modern tablets (a type of "computer," as broadly defined in 18 U.S.C. § 1030(e)) can typically "sync" with a traditional desktop or laptop computer. The purpose of syncing a tablet to a traditional computer is to back up data that is stored on the tablet so that it is not permanently lost if the portable tablet is lost or damaged. Also, tablet users may move files off the tablet and onto a computer to free up storage space on the tablet. Similarly, computer (*e.g.*, desktop computers, tablets, etc.) users may move files off of one computer onto another computer or digital file storage devices such as a thumb drive, a DVD, an external hard drive to free up space on the computer. For this reason, I am seeking authorization to seize all computers and digital file storage devices reasonably believed to belong to or have been used by Christopher Nicholas Arico at the SUBJECT PREMISES—not any particular computer.

27.    Finally, I know that many modern smart tablets, including Apple and Samsung-brand tablets, can be encrypted by the user using his finger and/or thumbprint or facial image to lock and unlock the device. Without the user's prints, the devices are difficult, if not impossible, for law enforcement personnel to unlock. Accordingly, I am requesting that, to the extent law enforcement seizes any tablet or smart cell phones or other computer described in Attachment B during a search of the SUBJECT PREMISES (described in Attachment A), and if such device(s) features such encryption, then law enforcement may, while executing the search warrant at the SUBJECT PREMISES, use Arico's finger and/or thumbprint and/or facial image with any such encryption feature to attempt to unlock the device.

## CONCLUSION

28.    Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that Christopher Nicholas Arico, residing in the SUBJECT PREMISES, possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and distributed child pornography in violation of 18 U.S.C. § 2252A(a)(2).    Additionally, there is probable cause to believe that evidence of the criminal offenses is located in the SUBJECT PREMISES, and this evidence, listed in Attachment B to this Affidavit, incorporated herein by reference, is contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.    As described in the probable cause section, there is probable cause to believe Christopher Nicholas Arico violated the aforementioned statutes.    I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.


MARISOL FLORES
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Signed and sworn before me this 20 day of February, 2024.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

19

**ATTACHMENT A**

**DESCRIPTION OF THE PREMISES**

**3700 NW 58th St., Oklahoma City, OK 73112**

The SUBJECT PREMISES, 3700 NW 58th St., Oklahoma City, Oklahoma 73112,

is located within Oklahoma County, in the Western District of Oklahoma. The SUBJECT

PREMISES has a single-family, single-story dwelling. The single-family dwelling is

constructed of what appears to be tan and beige brick, and beige trim. The numbers "3700"

are in black numbering above the garage.



The search of the SUBJECT PREMISES includes the residential dwelling and the

curtilage of the residence, including, but not limited to, storage buildings, vehicles, any

additional dwellings, vehicles, and appurtenances. The search of the SUBJECT

PREMISES also includes the search of any persons found or arriving on the SUBJECT

1

PREMISES during the course of the search to search for the items described in Attachment

B. These persons include, but are not limited to, Christopher Nicholas Arico, whose date

of birth is 6/XX/1989, and whose photo is depicted below:



**ATTACHMENT B**

**LIST OF ITEMS TO BE SEIZED**

Contraband, evidence, fruits, and instrumentalities related to Arico distributing

child pornography in violation of 18 U.S.C. § 2252A(a)(2) or possessing child

pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), in any form, including, but not

limited to:

1.      To the extent they are reasonably believed to belong to or be used by
Christopher Nicholas Arico: computer(s), as broadly defined in 18 U.S.C. § 1030(e) and
all other digital file storage devices, including (but not limited to) desktop computers, smart
phones, e-readers, tablets, thumb drives, SD cards, DVDs, compact discs, and external hard
drives; all computer hardware, computer software; computer related devices and
documentation; computer passwords and data security devices; videotapes; video
recording devices; video recording players; and video display monitors that may be, or are
used to visually depict child pornography or child erotica, display or access information
pertaining to a sexual interest in child pornography, display or access information
pertaining to sexual activity with children, or distribute, possess, or receive child
pornography, child erotica, or information pertaining to an interest in child pornography or
child erotica.

2.      Any and all notes, documents, records, or correspondence, in any format and
medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs
and electronic messages, and handwritten notes) pertaining to the possession, receipt, or
distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession,
receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct
as defined in 18 U.S.C. § 2256(2).

3.      In any format and medium, all originals, computer files, copies, and
negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of
minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child
erotica.

4.      Any and all diaries, address books, names, and lists of names and addresses
of individuals who may have been contacted by the operator of the computer or by other
means for the purpose of distributing or receiving child pornography as defined in 18
U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as
defined in 18 U.S.C. § 2256(2).

1

5.    Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6.    Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.    Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8.    Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9.    Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

10.    Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

11.    To the extent they are reasonably believed to belong to or be used by Christopher Nicholas Arico: any and all cameras, film, videotapes or other photographic equipment capable of storing images or videos of child pornography as defined in 18

2

U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

12.    Any and all visual depictions of minors to see if they match images of minors in child pornography.

13.    Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

14.    To the extent they are reasonably believed to belong to or be used by Christopher Nicholas Arico: any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

15.    Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

16.    To the extent they are reasonably believed to belong to or be used by Christopher Nicholas Arico: any and all equipment associated with routers, modems, and network equipment used to connect computers to the Internet.

If a smart cell phone or other computer, as described herein, is found that requires access by using a finger or thumbprint or facial recognition to unlock the device, then, while executing the search warrant at the SUBJECT PREMISES, a law enforcement officer may press the finger or thumbprint of Christopher Nicholas Arico present at the SUBJECT PREMISES onto the device to try to unlock it or use their face to unlock the device via facial recognition.

3